GASQUET et al. v. FIDELITY TRUST & SAFETY VAULT CO.

(Circuit Court of Appeals, Fifth Circuit.   June 27, 1893.)

No. 119.

WRITS—SUBSTITUTED SERVICE — MORTGAGE FORECLOSURE — INTERVENTION BY BONDHOLDERS.

A suit brought by the trustee under a mortgage to foreclose the same for the benefit of the bondholders secured thereby is a suit for the set tlement of a trust, and where the bondholders intervene by a petition in the nature of a cross bill, alleging misconduct on the part of the trustee whereby the value of their security is diminished, the matters thus arising are so connected with the subject-matter of the original suit as to entitle the bondholders to substituted service on the trustee's attorneys, the trustee itself being a nonresident.

Appeal from the Circuit Court of the United States for the Southern District of Alabama.

In Equity.   Bill by the Fidelity Trust & Safety Vault Company, a corporation organized under the laws of Kentucky, against the Mobile Street-Railway Company, to foreclose a mortgage.   A petition in the nature of a cross bill was filed by F. J. Gasquet and others, bondholders under the mortgage, alleging misconduct on the part of the trust company in the execution of the trust.   By leave of court, substituted service of the petition was had on the trust company's attorneys, and also upon its president while temporarily in the state.   Subsequently a motion to set aside such orders of service was granted, (53 Fed. Rep. 850,) and from this action of the trial court the interveners appeal.   Reversed.

For opinions rendered in the litigation under the original bill, see 53 Fed. Rep. 687, and 54 Fed. Rep. 26.

Statement by LOCKE, District Judge:

This is an appeal from an order of the United States circuit court for the southern district of Alabama, setting aside service of notice and process (upon the intervention of the appellants) made on the appellee's solicitors and on the appellee, respectively.   On August 15, 1887, the Mobile Street-Railway Company, an Alabama corporation, owned and operated certain street-railway property in the city of Mobile, and also owned 900 shares, of the par value of $90,000, of the capital stock of the Mobile & Springhill Railroad Company, another street-railroad corporation in the city of Mobile. On that date the Mobile Street-Railway Company, to secure an issue of its coupon bonds aggregating $500,000 par value, executed and delivered to the appellee, the Fidelity Trust & Safety Vault Company, a Kentucky corporation, a deed of trust or mortgage upon its property, including the said 900 shares of stock.   The sixth article of the deed of trust provided that this stock should be transferred on the books of the Mobile & Springhill Railroad Company to the trust company, though the voting power and the right to dividends thereon should be retained by the Mobile Street-Railway Company until default in the payment of the said bonds and coupons.  The seventh article of the deed of trust provided that, in case of default in the payment of interest on the said bonds continuing for three months, the principal of the bonds should forthwith become due and payable, and the trustee should thereupon have the right to enter into possession and foreclose, and, "with or without the aid of proceedings in equity, as it may be advised, proceed to sell" the mortgaged property, including the 900 shares of stock; the net proceeds of the property to be applied to the payment of the principal and interest due on the said bonds.   The appellants duly purchased and

became the owners of more than $400,000 par value of the said bonds, or nearly the entire issue. The Mobile Street-Railway Company failed to pay the interest due on July 1, 1891, and January 1, 1892. On January 20, 1892, the appellee filed its bill of complaint in the United States circuit court for the southern district of Alabama against the Mobile Street-Railway Company alone, setting up the issuance of said bonds, the execution of the deed of trust, and the default in the payment of taxes and of the said interest. The substance of the deed of trust is set out in the bill of complaint, and a copy of it is attached to and made a part thereof. The prayer of the bill of complaint is as follows, viz.: "Wherefore, the premises considered, orator prays your honor to take jurisdiction of the subject-matter of this bill, and to decree that there is a default in said mortgage, and that said principal and accrued interest on said bonds are presently due and payable, and will ascertain the amount thereof, and will decree that on default of payment thereof within a reasonable time to be fixed by the honorable court, the said railroad property and franchises and other property described in said deed of trust, and the said hypothecated stock of the Mobile and Springhill Railroad Company, may be sold in such manner as may seem to be best for the interest of the trust represented by orator, and that the said railway company may be required to join in such conveyance of said property to the purchaser thereof, if deemed proper. Or that your honor may grant to your orator such other, further, or different relief in the premises as in equity and good conscience it ought to have."

Upon the filing of the bill of complaint, a receiver was moved for and appointed and put in charge of the mortgaged property. A decree pro confesso was subsequently rendered against the railway company, and a decree rendered upon the pleadings, ascertaining and decreeing that default had been made in the payment of the interest upon the bonds; that the complainant was entitled to relief, and the foreclosure of the deed of trust, and a sale of the property described therein. A reference to a special master was ordered, to ascertain and report the amount of the bonds and coupons secured by the deed of trust; the amount of the debt and interest thereon; what property came into the hands of the receiver, and what property was covered by the description contained in the deed of trust; what allowances should be made to the trustee for compensation and disbursements; what allowances should be made to the receiver and his attorneys; what allowances should be made to the trustee's attorneys for services in this proceeding and as advisory counsel in the matters relating to the trust; the amount of costs and expenses accrued and likely to accrue in the cause; the names of the various bondholders, and the number of bonds held by each; and what amount of the purchase money should be paid in cash upon the sale of the property.

The master made his report upon these matters, and the court then ordered the sale of the property, including 900 shares of stock. Before the property was actually sold, and before the report of the master was confirmed, the appellants, on behalf of themselves and of all other holders of bonds secured by the deed of trust, presented to the court a petition to be allowed to intervene in the cause, and to file their petition in the nature of a cross bill against the trustee, seeking to require it to account to the bondholders for a diminution in the value of the trust property, caused by a willful breach of trust on the part of the trustee, in accepting and attempting to execute a subsequent and conflicting trust upon the property represented by the 900 shares of stock, by allowing a mortgage to be placed upon that property for the benefit of other persons, and by actually agreeing, as trustee thereunder, to enforce that mortgage, and thus to nullify the security afforded by the 900 shares of stock.

The petition alleges the execution of the deed of trust by the Mobile Street-Railway Company to the appellee, its acceptance, the issuance of bonds thereunder, and the purchase of part thereof by the appellants in the usual course of business, before maturity, for a valuable consideration, and in good faith, and upon the faith and confidence that the railway company would deal in good faith with the property covered by the deed of trust, and that the trust company would faithfully observe and perform all of the duties, trusts,

and obligations thereby assumed and imposed upon it. The petition further sets forth the pledge of the 900 shares of stock, and the right to vote thereon reserved to the railway company until default; that the railway company held this voting power under an implied trust not to use it in such manner as to destroy or depreciate the value thereof, or to convert the lien of the bondholders from a first to a second lien, or to hinder or embarrass the enforcement of such lien, or to cast a cloud upon it; that it was the duty of the trustee not to accept any trust in conflict with that which it had already accepted, and not to participate in or encourage the railway company in any effort which the latter might make to vote, use, or control the said stock in any such manner as to impair its value, either directly or indirectly, but to oppose actively any such effort; that the trustee not only allowed the railway company to vote the said stock in such manner as greatly to depreciate its value, but also allowed a mortgage to be placed upon the property represented by the stock, and actively encouraged and participated therein, accepting the trusteeship thereunder, and was, at the time of the filing of this petition, proceeding to enforce such subsequent and conflicting trust, and was at the same time claiming more than $5,000 of the proceeds of its prior trust as compensation for the proper performance thereof; that the stock, except for such breaches of trust, would have been worth its par value; that by reason of these breaches it was rendered practically worthless, the appellants thereby losing nearly $90,000.

The petition sets out in detail the fraudulent character of the deed of trust made by the Mobile & Springhill Railroad Company to the appellee; the participation, both by the Mobile Street-Railway Company and by the appellee, in the issuance of bonds thereunder, and the acts of the trust company in enforcing this deed of trust to the detriment of the appellants.

Upon the presentation of this petition the court, on November 9, 1892, made an order, allowing the petition to be filed, and notice thereof to be given to the trust company, by service thereof upon its solicitors of record; and notice was, on the same day, accordingly served upon the solicitors of record. On November 9, 1892, a further and similar order was made, ratifying and confirming the previous order. On November 14, 1892, the property covered by the deed of trust of the Mobile Street-Railway Company was sold under the decree of the court for $231,300, the 900 shares of stock realizing only $6,300. By the decree of the court the sales were ordered to be made by the trust company; and, for the purpose of making this sale, the trust company sent its president, John D. Taggart, to Mobile, who, on behalf and in the name of the said trust company, made the sale. On the same day a subpoena in equity was issued upon the petition previously filed by the appellants, and was duly served on Taggart as such president.

The Fidelity Trust & Safety Vault Company is a Kentucky corporation, but is, and was prior to the time herein above mentioned, authorized by its charter to perform such trust as that created by the deed of trust of the Mobile Street-Railway Company, and is and was duly authorized to accept and manage trusts involving acts to be done on its part outside of the state of Kentucky and in the state of Alabama. In fact, it accepted the trust created by the deed of trust of the Mobile Street-Railway Company, and in the performance of the duties thereof it sent its said president to the city of Mobile to examine the property to be taken possession of under the deed of trust. It further actually took possession of the capital stock of the Mobile & Springhill Railroad Company, and, through its attorney in fact, attended one or more meetings of the stockholders of that company, held in Mobile, Ala. It claimed and had allowed to it for its services in the management of the trust more than $5,000, and it sent its president to Mobile to sell the property, as already stated; and while he was so in Mobile on such business the process of the court was served upon him.

The appellee made two motions,—one to set aside and vacate the services of notice upon its solicitors and to vacate the orders made respectively, authorizing such service; and the other to set aside the service of process upon Mr. Taggart, as president. The former motion was based upon the ground that the trust company was an ordinary trust company, domiciled in Ken-

tucky, and had not been engaged in the conduct of any business in Alabama, and had no officers or agents therein, and that the solicitors upon whom the service was made were employed only for the purpose of representing the trust company in the case of two foreclosure proceedings in Alabama, and that they were not employed or authorized to represent the trust company in any other business whatever. The other motion was made upon the ground that the trust company was a Kentucky corporation, not engaged in any business in Alabama, and that its president was in the southern district only for the purpose of making a sale of the property of the Mobile Street-Railway Company under the orders of the court. The court granted both motions, and made an order setting aside the service, both upon the solicitors and upon Mr. Taggart, and also vacating the orders made allowing the petitioners to intervene. The order thus made is appealed from, and it is assigned as error under eight different heads that the court erred in setting aside and vacating the orders allowing appellants to intervene, and in setting aside and vacating the service of process upon the attorneys of record and John D. Taggart, president of said company.

E. Howard McCaleb and Gregory L. Smith, (H. T. Smith, George F. Lapeyre, and Sherman & Sterling, on the brief,) for appellants.

D. P. Bestor, Gaylord B. Clark, (Frank B. Clark, Jr., on the brief,) for appellee.

Before McCORMICK, Circuit Judge, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) Although the language of the bill in this case, and the direct prayer for a foreclosure and sale of the mortgaged property, might lead to the conclusion reached by the court below, that the purpose intended was simply such foreclosure and sale, a more careful examination of its representations, and of the record of the subsequent proceedings, the decree pro confesso, the questions submitted to the special master, and findings by him, (all of which are plainly within the original purpose of the bill, and supported by the prayer for further relief,) and the representations of the bill that complainant was acting in the capacity of a trustee, and praying that the bondholders might be brought in, show plainly that it was a bill for the final settlement and disposition of a trust fund. Such creditors as the bondholders in this case, who are allowed to prove debts, belonging to a class on whose behalf a suit is brought, are regarded as quasi parties, and may have a standing in court, and be heard by intervention or cross bill upon anything touching their rights in the disposition of the trust. Anderson v. Railroad Co., 2 Woods, 628; Carter v. City of New Orleans, 19 Fed. Rep. 659; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. Rep. 638. Had the trustee, in selling the trust property, by collusion with a purchaser at the sale, or by any other improper or fraudulent proceedings, diminished the funds, the cestuis que trustent, the actual parties in interest, could certainly be heard upon the question as to the amount to which they were entitled; and we consider the same principle will apply in any suit to protect the funds from loss from any act prior to the origin of the foreclosure proceeding.

In the numerous cases found reported upon this subject the question has been, did or did not the matter of the cross bill grow out of, and did the relief demanded therein depend upon, the subject-

matter of the original bill? Wherever the conclusion has been in the affirmative, the cross bill has been sustained, and, where not so relating or dependent, it has been dismissed. The very object and purpose of a cross bill is to allege and set up new matters not alleged in the original bill, and the only measure of its validity as the foundation of an ancillary suit is the connection which the relief prayed for under it has to the subject-matter of the original bill. In a bill intended for the final settlement and determination of a trust no question can be of greater importance, or more clearly the subject-matter of the suit, than the ascertaining of the amount of the trust fund; and it would appear to us that any cross bill alleging the wrongful diminution of such fund would be entitled to a hearing in the same case before the rights of the parties were finally adjudicated. The questions raised by appellants in their cross bill are directly connected with the administration of the trust, and it charges that the value of said trust fund has been reduced by the conduct of the trustees. The hearing and determining of the validity of such allegations we consider directly connected with the administration and final settlement of the trust, which is the subject-matter of the original bill, and that the petition or cross bill filed for that purpose makes an ancillary or dependent cause, in which substituted service should have been sustained.

The position taken and strongly urged by the appellee, that the matters and things presented by appellants were fully heard and determined by the decree of December 12th, from which no appeal has been taken, and are therefore res adjudicata, cannot be accepted, as in that decree the settlement with the trustee is especially reserved. Also in the agreement of January 3d, by which it is urged appellants are estopped, it was specially stated that it should not be construed so as to bar appellants from the right to assign as error any action of the court upon the petition. We are not called upon to determine the sufficiency of the allegations of the petition or cross bill, or how far affirmative relief, if any, under it might extend, but whether the matter of such allegations is so connected with and relates to the subject-matter of the original suit as to constitute the foundation of such ancillary or dependent suit as would justify a substituted service, and this question we answer in the affirmative.

It is ordered that the decree of January 4, 1893, which set aside the orders of the 7th and 9th of November, 1892, authorizing services to be made on solicitors of record of appellee herein, be reversed, and the cause be remanded to the circuit court, with directions to re-establish such orders and such service, and take such proceedings in said cause as, according to right and justice, ought to be had, and that the appellee pay the costs herein.