ALEXANDER ET AL., RECEIVERS, *v.* HILLMAN ET AL.*

Nos. 15 and 16.   Argued October 17, 18, 1935.—Decided December 9, 1935.

---

* The respondents in this case were: J. H. Hillman, Jr., A. B. Sheets, Thomas Watson, Hillman Coal & Coke Co., and Hecla Coal and Coke Co.

224

*Mr. David A. Reed,* with whom *Messrs. Edwin W. Smith, Wm. M. Robinson, E. C. Higbee,* and *Arthur S. Dayton* were on the brief, for petitioners.

*Mr. Alexander J. Barron,* with whom *Messrs. Edward W. Knight, George E. Alter,* and *Thomas B. Jackson* were on the brief, for respondents.

226

228

MR. JUSTICE BUTLER delivered the opinion of the Court.

The controversies here involved arise in a suit in equity brought November 3, 1924, in the federal court for the southern district of West Virginia by the Piedmont Coal Company, a Pennsylvania corporation, and three persons, inhabitants of Pennsylvania, against the Tower Hill Connellsville Coke Company of West Virginia, a corporation organized under the laws of that State. The plaintiffs own 4,000 common and 10,850 preferred shares of its stock. August 25, 1932, the court entered a decree that defendant's business be wound up and its properties converted into money and distributed to its creditors and shareholders, appointed petitioners receivers, and directed a special master to state an account and to report to the court all claims against defendant. Respondents have

presented claims. Petitioners oppose their demands and by counterclaims ask affirmative relief.

The questions, as put by them, are:

"(1) When a claimant appears before a master in a federal receivership proceeding and proves a claim to share in the distribution of the receivership *res*, does he submit himself to the jurisdiction of the receivership court for the adjudication of his liability to the *res*, when the counterclaim asserted against him by the receiver is of a nature cognizable in equity and its adjudication is essential to a final disposition of the receivership proceeding?

"(2) Is not the adjudication of the counterclaim against the claimant and the determination of the whole controversy within the purpose and intendment of Equity Rule 30? "

The Tower Hill Connellsville Coke Company, a Pennsylvania corporation, operated coal mines and coke plants.* The West Virginia Tower Hill, by issue of its stock to the stockholders of the Pennsylvania Tower Hill, acquired all the share capital of the latter and until January 8, 1930, was merely a holding company owning only that stock. In April, 1920, Thompson Connellsville Coke Company, a Pennsylvania corporation, purchased a majority, about 28,000 shares, of the common stock of the West Virginia Tower Hill. Respondent Hillman, an inhabitant of Pennsylvania, was president of and controlled the purchasing company. Respondents Sheets and Watson of that State were also its officers. Hillman became president and Sheets and Watson became officers of both Tower Hill companies. In June, 1920, the Eastern Coke

---

* The facts prior to the appointment of the special master are derived from the records of earlier litigation in this suit that were filed in this court with petitions for certiorari. 280 U. S. 607. 290 U. S. 675. We take judicial notice of them. *National Fire Ins. Co.* v. *Thompson,* 281 U. S. 331, 336, and cases cited.

Company was organized under Pennsylvania law; Hillman became its president and Sheets and Watson were given other offices. They caused the Pennsylvania Tower Hill to subscribe for 51% of the common shares, and later it acquired the rest. The three individual respondents were also directors of the Tower Hill companies, the Eastern Company and the two corporate respondents, the Hillman Coal & Coke Company and the Hecla Coal & Coke Company. Hillman, with the other two acting under his direction, dominated these five corporations. The corporations maintained joint general offices and joint sales, operating and engineering departments.

The preferred stock of the West Virginia Tower Hill was, in preference to the common, entitled to cumulative dividends at the annual rate of $6 per share and, upon distribution of assets, par plus unpaid dividends. In 1924 the company paid $9, leaving then accumulated $97.50 per share. No other dividend has been paid. The stockholders' bill alleged that, ever since Hillman took control, the Pennsylvania Tower Hill had sufficient resources to pay a dividend out of which the West Virginia Tower Hill could make a payment on account of its own preferred stock but that the directors of the former fraudulently refused to declare any dividend, and that it was intended to exhaust the resources of both companies without paying anything to stockholders of the latter. It prayed the appointment of receivers empowered to take the shares of Pennsylvania Tower Hill and vote them at meetings of the company's stockholders and to demand that it declare dividends, to procure appointment of ancillary receivers in Pennsylvania and, if found necessary, to bring suits there.

Defendant's answer denied the fraud charged. The court found plaintiffs entitled to relief and that the Pennsylvania Tower Hill had sufficient funds to pay $20 per share on defendant's preferred stock. It declared that,

if the companies failed within 30 days to take steps to do this, receivers would be appointed and given appropriate authority. Then, defendant moved to dismiss the suit for want of indispensable parties asserted to be: its common stockholders including the Thompson company, the Pennsylvania Tower Hill, and defendant's directors, all citizens of Pennsylvania. In support of the motion, defendant alleged that the directors were the actors in all the transactions of which the bill complained. Making any inhabitant of Pennsylvania a party would destroy diversity of citizenship and oust jurisdiction. *Salem Trust Co.* v. *Manufacturers' Finance Co.*, 264 U. S. 182, 189. The court refused to entertain the motion and, since no steps were taken to pay the dividend, appointed receivers and authorized them substantially as prayed.

Defendant appealed. The Circuit Court of Appeals, July 8, 1929, found that the holders of defendant's preferred stock had been subjected to treatment that amounted to fraud in law and that enough had been shown to require the appointment of receivers with power to bring in the courts in Pennsylvania all actions necessary to protect plaintiffs' rights. It held that for the appointment of receivers, with power so limited, the West Virginia Tower Hill was the only necessary party. 33 F. (2d) 703. This court having denied defendant's petition for certiorari (280 U. S. 607) the district court made its decree conform to the mandate of the Circuit Court of Appeals. The district court for western Pennsylvania appointed ancillary receivers with authority to sue the Pennsylvania Tower Hill, its officers and directors to obtain transfer by that company of property and money to the defendant. But, after the decision of the Circuit Court of Appeals and while its mandate was stayed pending decision by this court upon petition for certiorari, the individual respondents caused several transfers to be made: Pennsylvania Tower Hill traded coal lands for a

mine of Redstone Coal & Coke Company. Eastern Coke Company conveyed all its assets to Pennsylvania Tower Hill. And the latter transferred all its property to defendant.

Then plaintiffs by an amended and supplemental bill prayed that defendant be dissolved and that receivers be appointed to distribute its assets to creditors and stockholders. The relief was sought upon the ground that the purpose of the transfers had been to prevent inquiry into the management of the Tower Hill companies; great losses were endangering security for preferred stock liability, and the purposes for which the defendant was organized had failed. Almost immediately after knowledge of plaintiffs' purpose to file that bill, defendant paid $1,184,000 for 11,840 shares of the Emerald Coal & Coke Company. Plaintiffs then filed a second amended and supplemental bill. After answer and trial, the district court, in accordance with the plaintiffs' allegations and proofs, found: The purpose of the transfer of assets from Pennsylvania Tower Hill to defendant was to prevent the receivers from securing any relief. Defendant's assets had so decreased as to imperil its preferred shares and their value might disappear in the near future. And, August 25, 1932, it entered a decree substantially as prayed.

The Circuit Court of Appeals affirmed. 64 F. (2d) 817. It held:

None of the transactions occurring since its first decision has been to the advantage of the Tower Hill companies. The purchase of the Emerald stock was definitely harmful. Assets are hardly more than enough to pay preferred stockholders. To continue the business would allow those in control, who have shown utter disregard of rights of preferred stockholders, to speculate further at their risk alone. Transfer of assets by the Pennsylvania Tower Hill to defendant rendered futile and useless any-

thing the receivers might do in Pennsylvania and was made for that purpose. There was no lack of indispensable parties. This court denied certiorari. 290 U. S. 675.

Respondents' claims were verified and presented at a hearing before the master January 30, 1934. Hillman and Sheets claim the value of $105,000 in government bonds furnished by them to obtain supersedeas on defendant's appeal from the decree of August 25, 1932. Watson claims $33,750. This is for salary as defendant's secretary, and for services as counsel for defendant in the main suit and for the Pennsylvania Tower Hill in tax matters. The Hecla company claims as owner of preferred and common shares of defendant. The Hillman company claims $2,720.03, alleged to have been paid for account of defendant in adjustment of expenses of the companies having joint offices.

February 19, 1934, the receivers filed an ancillary bill. It asserts four counterclaims. The first is for large sums that under the guise of salaries the individual respondents took from the Tower Hill and Eastern companies. The amounts so withdrawn were wholly disproportionate to the value of services rendered. The second is for $1,184,-000 that, for the advantage and benefit of Hillman personally, they caused defendant to pay for the shares of Emerald company. The third is for money that they, through and for the Hillman company, caused to be taken from the Tower Hill and Eastern companies under pretense of apportionment of joint expenses. The fourth is for $356,000, the value of land of the Pennsylvania Tower Hill that they, for the benefit of the Hecla company, caused to be transferred to the Redstone company in exchange for the coal mine, and claim is made for additional sums paid for taxes and improvements upon the latter. The facts alleged amount to charges that the disbursement of moneys and transfer of property complained of

were directed to be made by the individual respondents in bad faith and in violation of duties that as officers and directors they owed to the three companies and their stockholders and were misappropriations of the assets of these corporations.

The bill alleges that the claims presented by respondents cannot be adjudicated without consideration of the claims that the receivers assert against them and that the adjudication of both groups of claims in one proceeding is necessary for the effectual enforcement of the principal decree. It prays: that Hillman, Sheets and Watson be required to pay the amounts that they took under the guise of salaries and, upon return to them of the shares of the Emerald company, the amount they caused defendant to pay therefor; that they and the Hillman company pay the money taken on the pretended division of expenses; and that they and the Hecla company, upon return of the property received in exchange, pay the value of the coal lands handed over by Pennsylvania Tower Hill to the Redstone company, together with the net amounts expended by the Tower Hill companies upon the first mentioned property.

The court's order granting leave to file the ancillary bill directed that it be given a separate number and that it be ancillary to the main suit, required defendants to move to dismiss or to answer within a specified time, directed receivers to mail to respondents at Pittsburgh, and to deliver at the office in West Virginia of defendant's counsel in the main suit, a copy of the order and of the ancillary bill. This having been done, respondents appeared specially and moved to vacate the order and to quash the service on the ground that none of them was within the jurisdiction but that each was an inhabitant of Pennsylvania within the purview of § 51, Judicial Code, 28 U. S. C., § 112.

The court dismissed the bill for want of jurisdiction over the persons of respondents. By a memorandum filed with the order, the district judge indicated that he was of opinion that the respondents, by presenting their claims and appearing before the master, had become parties for all purposes but that, if he were to so hold, the suit would have to be tried before the question of jurisdiction could be finally decided, and that therefore he would grant the motion to dismiss so that the receivers might appeal and have the question settled in advance of trial. The Circuit Court of Appeals, one of the judges dissenting, held that the district court was without jurisdiction of respondents to adjudicate the counterclaims or to grant any affirmative relief. It did have jurisdiction to pass on any defense, legal or equitable, which might be asserted against respondents' claims, and to stay action thereon until the counterclaims could be elsewhere adjudicated " so that they could be set off against the claims, or the amounts payable thereunder, as might be proper." The district court should have retained the ancillary bill, " treating it as a petition to stay action on the claims . . . and as setting up defenses . . . where the matters alleged could be considered as purely matters of defense as distinguished from counterclaims." The court modified the decree and remanded the case for proceedings in accordance with the opinion. 75 F. (2d) 451. This court granted certiorari. 295 U. S. 725.

The subject matter of the main suit is the right of plaintiffs, being stockholders of defendant, to have its business wound up, and its assets collected and distributed among its creditors and stockholders. That the district court had jurisdiction to enter that decree has been finally adjudged. 64 F. (2d) 817. The receivers are the court's representatives and are entitled to have all the property belonging to defendant, and upon leave, may sue to re-

cover any part of the *res*. The controversies before us arise between respondents who come to share therein and the receivers who not only put in issue the validity of respondents' claims but allege that they have and refuse to account for a portion of the assets. Undoubtedly the court has jurisdiction of the subject matter, i. e., the claims and counterclaims. *White* v. *Ewing,* 159 U. S. 36. *Pope* v. *Louisville, N. A. & C. Ry. Co.,* 173 U. S. 573, 577, *Peck* v. *Elliott,* 79 Fed. 10.

We come to the question whether the court has jurisdiction of the persons of respondents in respect of the counterclaims.

They were not parties to the controversy resulting in the decree winding up defendant's affairs. The court has issued no process against them. The delivery of copies of the order and bill in accordance with the court's direction did not make them parties. But petitioners insist that by presenting their claims respondents submitted themselves to the jurisdiction of the court to grant affirmative relief on the causes of action alleged against them. Respondents contend that in the last analysis the issue is one of venue. They say: The ancillary bill is an original one commencing a suit to which they, being inhabitants of Pennsylvania, cannot be made parties by the service of process. The proving of claims before the special master did not make them parties to the original cause and they have not thereby waived the privilege conferred by § 51 of the Judicial Code.

Respondents appropriately presented their claims and became entitled to adjudication without petition for intervention, any formal pleading or commencement of suit. Unquestionably, they submitted themselves to the court's jurisdiction in respect of all defenses that might be made by the receivers and of all objections that other claimants might interpose to the validity, amounts or priorities of

their claims. And they put themselves in position, should their interest warrant, to challenge the receivers' acts and the demands of others claiming as creditors. *Stewart* v. *Dunham,* 115 U. S. 61, 64. *Elkins* v. *First Nat. Bank,* 43 F. (2d) 777, 779. *Continental Trust Co.* v. *Toledo, St. L. & K. C. R. Co.,* 82 Fed. 642, 647. *Jones & Laughlins* v. *Sands,* 79 Fed. 913. *Gasquet* v. *Fidelity Trust & Safety Vault Co.,* 57 Fed. 80, 83. *Acme White Lead & Color Works* v. *Republic Motor Truck Co.,* 285 Fed. 88, 90. And see *Youtsey* v. *Hoffman,* 108 Fed. 693, 695.

The ancillary bill is not an original bill for the commencement of a suit. That it was not so intended is shown by the fact that process was not prayed or issued. While in form not inappropriate for commencement of suit, it was in fact formulated and filed to serve as a pleading in the main suit to put respondents to proof of their claims and to assert the right to affirmative relief. Treating their established forms as flexible, courts of equity may suit proceedings and remedies to the circumstances of cases and formulate them appropriately to safeguard, conveniently to adjudge and promptly to enforce substantial rights of all the parties before them. See Story, Equity Jurisprudence, 14th ed., § 28.

All trusts, those implied as well as those expressly created, are within the jurisdiction of courts of equity. The doctrine of trusts is deemed to be " the most efficient instrument in the hands of a chancellor for maintaining justice, good faith, and good conscience; and it has been extended so as to embrace not only lands, but chattels, funds of every kind, things in action, and moneys." *Clews* v. *Jamieson,* 182 U. S. 461, 479. Pomeroy, Equity Jurisprudence, 4th ed., § 151. It is to be understood from the allegations of the ancillary bill that the individual respondents as officers and directors so dominated the corporate owners that they had and exerted full power over

all the corporate property and transactions. Causes of action arising from transgressions of officers and directors of corporations such as those on which the receivers rest their counterclaims are cognizable in equity for the reason that the receivers have no adequate remedy at law and also because respondents, as it is alleged, fraudulently obtained defendant's property and therefore cannot in equity and good conscience retain it. See Pomeroy, §§ 155, 157. *Cockrill* v. *Cooper,* 86 Fed. 7, 13, *et seq.* And, so far as concerns the matters in controversy here, the individual respondents are to be dealt with just as if they were technically trustees for creditors and stockholders. *Koehler* v. *Black River Falls Iron Co.,* 2 Black 715, 720–721. *Jackson* v. *Ludeling,* 21 Wall. 616, 624, 631. *Wardell* v. *Railroad Co.,* 103 U. S. 651, 658–659. *Briggs* v. *Spaulding,* 141 U. S. 132, 147. *Geddes* v. *Anaconda Mining Co.,* 254 U. S. 590, 599. The allegations of the ancillary bill make it appear that the corporate respondents were so under control of the individual respondents as to be merely their tools for carrying out the transactions culminating in the misappropriations charged. It results therefore that all the claims asserted against respondents may be dealt with in equity.

The rule contained in § 51, Judicial Code, 28 U. S. C., § 112, that is invoked by respondents here declares: ". . . no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant . . ." The section applies only where a suit is "brought . . . by any original process or proceeding . . ." No attempt was made to summon respondents into court. That provision does not affect the general jurisdiction of district courts but merely confers a personal privilege that may be waived. *General Investment Co.* v. *Lake Shore & M. S. Ry.,* 260 U. S. 261, 272. *Lee*

v. *Chesapeake & Ohio Ry.*, 260 U. S. 653, 655. By presenting their claims respondents subjected themselves to all the consequences that attach to an appearance, § 51 to the contrary notwithstanding. See *General Electric Co.* v. *Marvel Co.*, 287 U. S. 430, 435.

Petitioners invoke a provision of our Equity Rule 30: " The defendant by his answer shall set out . . . his defense to each claim asserted in the bill . . . The answer must state . . . any counterclaim arising out of the transaction which is the subject-matter of the suit, and may . . . set up any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him . . ." It may not be said that, by presenting their claims, respondents commenced a suit and so brought that provision into play. The rule does not purport to cover, and was not prescribed for, situations such as that here presented. *Chandler & Price Co.* v. *Brandtjen & Kluge, Inc., ante,* p. 53. But the omission so to extend the rule gives rise to no implication that receivers may not assert and enforce, against those who appear and demand part of the *res,* counterclaims for portions of the receivership estate that they wrongfully took and still withhold. The right of the receivers to have affirmative relief in the receivership court is supported by the same, or at least similar and equally strong, reasons as those that constitute the foundation of the rule. Cf. *American Mills Co.* v. *American Surety Co.*, 260 U. S. 360, 365. *Moore* v. *N. Y. Cotton Exchange,* 270 U. S. 593, 609.

Respondents' contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated. In behalf of creditors and stockholders, the receivers reasonably may insist that, before taking aught, respondents

may by the receivership court be required to make restitution. That requirement is in harmony with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief. Pomeroy, §§ 181, 231. *United States* v. *Union Pacific Ry. Co.*, 160 U. S. 1, 52. *Camp* v. *Boyd*, 229 U. S. 530, 551–552. *McGowan* v. *Parish*, 237 U. S. 285, 296. *Greene* v. *Louisville & Interurban R. Co.*, 244 U. S. 499, 520. Cf. *Hartford Accident Co.* v. *Southern Pacific*, 273 U. S. 207, 217–218. Distribution may not be made without decision upon the counterclaims. Nothing is more clearly a part of the subject matter of the main suit than recovery of all that to the *res* belongs. *Gasquet* v. *Fidelity Trust & Safety Vault Co., supra*, 83–84. *Peck* v. *Elliott, supra*. *Hollander* v. *Heaslip*, 222 Fed. 808, 811.

The Circuit Court of Appeals rightly held that the district court has jurisdiction to pass on all defenses against respondents' claims, but erred in holding it to be without jurisdiction to grant affirmative relief. The decision permits the court to pass upon the receivers' rights of recoupment and set-off up to the amount of respondents' claims but, without regard to what they are entitled to have, prevents that court from giving them judgment against respondents. That limitation may be assumed to be in harmony with the rule governing recoupment and set-off that formerly was strictly applied. Cf. *Virginia-Carolina Chemical Co.* v. *Kirven*, 215 U. S. 252, 258. *Merchants Heat & L. Co.* v. *Clow & Sons*, 204 U. S. 286, 289–290. But, contrary to the rule that equity will decree complete relief, the prescribed restrictions prevent appropriate adaptation of equity to the circumstances of cases. It requires the receivers to split their causes of action. While permitted to seek enforcement of so much of their claims as are "purely defensive," they would be com-

pelled to go to another court to recover the rest. The splitting required extends even to separate items that go to make up a single cause of action; e. g., the items constituting the claim based upon respondents' apportionment of expenses. And if the receivership court has jurisdiction of respondents in respect of only so much of the receivers' counterclaims as are strictly defensive, then its determinations as to those parts would not be binding as to the rest. *Portland Wood Pipe Co.* v. *Slick Bros. Construction Co.*, 222 Fed. 528. The decision may be construed to direct the receivership court to stay all proceedings on respondents' claims until final judgment may be obtained in suits brought elsewhere upon the causes of action asserted by the receivers. That would introduce additional elements of uncertainty and would involve unnecessary delay, work and expense. As the individual respondents dominated the defendant and the other corporations used to effect the alleged misappropriations and also directed defendant's part in this litigation, it would seem that necessarily most of the issues in respect of the counterclaims will be quite similar to those litigated in the main suit. Unquestionably, all matters in the controversies between the parties may be tried and determined more conveniently and promptly in the receivership court than elsewhere.

It is clear that, under the circumstances disclosed, the restrictions laid by the Circuit Court of Appeals upon the receivership court are not consistent with that freedom as to procedure that necessarily belongs to courts of equity administering receiverships. See *Portland Wood Pipe Co.* v. *Slick Bros. Construction Co., supra.* Its decree will be reversed and the case remanded to the district court with directions to proceed in accordance with this opinion.

*Reversed.*