382

UNITED STATES v. PRYOR et al. (UNIT-
ED STATES et al., Defendants by
counterclaim).

No. 47190.

District Court, N. D. Illinois.

Feb. 16, 1940.

William J. Campbell, U. S. Dist. Atty., of Chicago, Ill., for the United States.

Ellis & Westbrooks, of Chicago, Ill., for defendants Pryor.

Theodore G. Gaines, of Chicago, Ill., for defendant S. C. Jackson, doing business as Community Electric Shop.

Rothbart & Rosenfield, of Chicago, Ill., for C. I. T. Corporation.

Fred Gariepy, of Chicago, Ill., for Iroquois Coal Co.

SULLIVAN, District Judge.

On May 31st, 1938, prior to the effective date of the New Rules of Civil Procedure, complaint was filed by the United States against Dr. Mason Pryor and Mrs. Daisy Pryor, of No. 5039 Indiana Avenue, Chicago, Illinois, based upon a promissory installment note executed by defendants on October 30th, 1936, for an insured modernization loan in the sum of $348.93, payable to the Iroquois 'Coal Company, of Chicago, Illinois, the sum being payable in monthly installments of $11.63 each on the 26th day of each month, beginning December 26th, 1936. This loan was made to defendants under the provisions of Title I, § 2 of the National Housing Act, Title 12, § 1703, U.S.C.A., for the purpose of enabling defendants to purchase and install a stoker on their premises.

This note passed through the hands of several parties, who are not shown to be other than bona fide holders in due course, without notice of any infirmities, the note being finally purchased by the North American Finance Corporation of Indianapolis, Indiana, one of the institutions insured by the United States under the Federal Housing Act, and the Pryors notified that the North American Finance Corporation was the holder of the note.

Defendants failed to meet the monthly installments, and on the 14th of May, 1937, the North American Finance Corporation filed a claim with the Federal Housing Administrator.

June 8, 1937, the Federal Housing Administrator issued its check in the sum of $320.97 to the Finance Corporation in settlement of its claim against defendants, whereupon the Finance Corporation assigned all of its right, title and interest to the Federal Housing Administrator.

Plaintiff prays judgment against the defendants in the sum of $320.97, together with court costs and interest at 5%, as well as additional interest amounting to $5.19 which accrued prior to October 4th, 1937.

May 15, 1937, defendants filed their answer, together with a counter-claim which asks an affirmative judgment of $1500.00 against the United States and the third party defendants or some of them.

May 31, 1937, defendants filed their motion asking leave to make S. C. Jackson, doing business as Community Electric Shop; Iroquois Coal Company; and C. I. T. Corporation third party defendants, and on the same day the court entered an order granting Dr. Pryor and Mrs. Pryor leave to make these parties third party defendants; that a supplemental summons be served on them and that they be required to answer and plead to the counterclaim. Pursuant to this order the supplemental summons was issued and served on the third party defendants.

June 19, 1939, the United States filed a petition asking that the counter-claim be dismissed on the ground that Rules 13 and 14, New Rules Federal Procedure, 28 U.S.C.A. following section 723c, do not apply to this case. That this suit is based on a negotiable promissory note, and the counter-claim is based on a purported equitable right under a contract,—two separate and distinct actions. That the third party defendants would not be liable to counterclaimants, or to the United States for any judgment secured by the United States on the note in question; and that the laws of Illinois do not allow equitable defenses in a suit on a promissory note.

On June 19, 1939, the C. I. T. Corporation also filed its petition asking that the counter-claim be stricken and dismissed as to it, on the grounds that the counter-claim was not filed in conformity with the rules; that it has been improperly joined; that no cause of action is stated against it in the counter-claim; and that the counter-claim does not set out any jurisdictional facts.

June 20, 1939, Iroquois Coal Company filed its motion to strike and' dismiss the counter-claim as to it on the ground that it is improperly joined; that no cause of action is stated against it in the counter-claim; that no statement, sales contract, agreement or document is declared upon showing a cause of action against it.

August 11, 1939, S. C. Jackson, doing business as Community Electric Shop, filed his motion asking that the counter-claim be dismissed as to him and that he be dismissed as a third party defendant, on the ground that he is improperly joined as a third party defendant; that this court has no jurisdiction over him; that the counter-claim was improperly filed and is not germane to the original complaint.

The answer consists of fifty paragraphs, paragraphs 5, 6, 8, and 11 to 49, inclusive being incorporated by reference in the counter-claim. The answer sets out that S. C. Jackson, doing business as Community Elec-

tric Shop, agreed to install on counter-claimants' premises a stoker on sixty days' trial; that no charge would be made to them for the sixty-day trial period, but that if during that period the stoker proved satisfactory, they might purchase the same for $348.93 on a conditional sales agreement payable in thirty monthly installments of $11.63 each. That Jackson represented that he had made a survey of their two-flat building, and that installation of the stoker would reduce their coal bill by one-half at the same time producing double the amount of heat being furnished by their furnace. That he would furnish inspection, adjustment, repair service and replacement of defective parts for the period of one year. That he guaranteed and warranted that the stoker would be perfect in material and workmanship, and if it proved unsatisfactory in any way within the sixty-day trial period he would remove it without expense to them. That counter-claimants relied on his representations and warranties, and thereupon signed a paper which Jackson told them was necessary in order that the stoker be installed on trial; and that they also subsequently signed other papers for persons whose names are unknown to them. That within the sixty-day trial period the stoker proved unsatisfactory and inadequate and that they so informed Jackson, and requested that the stoker be removed. That Jackson directed them to make a like complaint to the Iroquois Coal Company, which counter-claimants did. That both Jackson and the Coal Company promised to adjust the stoker, but failed and neglected to do so. That counter-claimants served notice on the United States Federal Housing Administrator and all of the third party defendants, that the stoker was unsatisfactory and that they wished the same removed; that nothing was due from them because they had not agreed to purchase the stoker unless after sixty days' trial it proved satisfactory, in the manner warranted and guaranteed by Jackson. That counter-claimants finally had the stoker removed at their own expense, and also expended large sums of money in having installed another and different stoker. That as a result of the unsatisfactory operations and defective condition of the stoker installed by Jackson they lost their tenants because of inability to furnish heat to them; that Mrs. Pryor contracted an illness for which they expended large sums of money for medicine and medical care, all of which counter-claimants ask shall be set-off against plaintiff's claim.

S. C. Jackson and C. I. T. Corporation, two of the third party defendants, make objection that defendants did not follow the Rules of Civil Procedure in bringing in the third party defendants. Rule 14 provides:

"(a)   When Defendant May Bring In Third Party. Before the service of his answer a defendant may move ex parte, or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him."

In the instant case defendants filed their answer and counter-claim on May 15th, 1939, and on May 26 served notice on the United States District Attorney that on May 31st they would appear before this court and ask for an order making S. C. Jackson, doing business as Community Electric Shop, Iroquois Coal Company and C. I. T. Corporation third party defendants. May 31st, defendants filed their motion asking leave to bring in the third party defendants, supported by affidavit, and on the same day the court entered an order granting the motion, and making the additional parties third party defendants. The return of the Marshal shows that the C. I. T. Corporation was served on June 3, 1939; Iroquois Coal Company on June 6th, 1939; and S. C. Jackson on June 8th, 1939.

I believe that defendants have substantially complied with the provisions of Rule 14.

All of the third party defendants have asked in their petitions, filed under Rule 12(b) that they be dismissed as third party defendants on the ground that they and the counter-claimants are citizens of the same state, and therefore there is no diversity of citizenship.

In the case of Crum v. Appalachian Electric Power Co., D.C., 27 F.Supp. 138, 139, the third party defendant was duly served with process and complaint, and it appeared and moved to dismiss the action against it on the ground that it (the Winisle Coal Company) was a citizen of the State of West Virginia, of which the plaintiff also was a citizen, and that there was no diversity of citizenship, and therefore it could not be made a third party defendant. The Coal Company claimed that under Rule 8 and Rule 82 the court did not have jurisdiction to entertain a claim against it, but the Power Company urged that Rule 14 did not require that the third party be a citizen of

another state from the plaintiff. The court there said:

"Without going into a long discussion of the case, I can only say that the question arising under Rule 14 is a decidedly important one, and will require the final decision of the last court to find exactly what it means. It was argued on behalf of the Power Company that the action was properly in the Federal Court, and that the bringing in of the Coal Company as a third-party defendant was only ancillary to the main action and did not necessitate jurisdictional or venue requirements.

"On examination of official form 22, it seems to me that the Committee (that formulated the rules) and the Supreme Court adopted this view, since the form for a third-party complaint, unlike the forms for original complaints, omits any allegation of jurisdiction.

"This idea seems to have been strongly urged by commentators, especially in the Yale Law Journal, 44 Yale L.J. 1291, 1322; 45 Yale L.J. 393, 421. See Moore's Federal Practice, Volume 1, pages 779–782.

"There is a class of actions where a railway company is sued, along with the engineer and other employees, for damages because of death or injury to some person by the operation of a train, and there is shown by the complaint * * * a separable controversy between the plaintiff and the railway company, and the cause is removed to the Federal Court on such claim, the whole suit is transferred there, although the engineer and other defendants are citizens of the same state as the plaintiff.

"It seems to me that there is a certain analogy between this class of cases and the one here under Rule 14. In an examination of the notes to Rule 14 contained in the April, 1937 edition of the Report of the Advisory Committee, the following language is used. 'Third-party impleader is in some aspects a modern innovation in law and equity although well known in admiralty. Because of its many advantages a liberal procedure with respect to it has developed in England, in the federal admiralty courts, and in some American state jurisdictions.' * * *

"If the narrow construction claimed by the Coal Company is put upon Rule 14, it will be found that in the most numerous class of cases in federal jurisdiction, the rule will be absolutely useless. Therefore, I overrule the motion to dismiss the Coal Company as a third-party defendant."

In Kravas v. Great Atlantic & Pacific Tea Co., D.C., 28 F.Supp. 66, 67, a suit was brought by plaintiff against the Tea Company for injuries alleged to have been suffered when plaintiff fell over some cellar doors on the sidewalk in front of defendant's store. Under Rule 14(a) of the Federal Rules of Civil Procedure the owner of the property and the mortgagee were brought in as third party defendants. On ground for the motion to dismiss was that the court was without jurisdiction of the third party complaint because both the plaintiffs and the third party defendants were citizens of Pennsylvania. The court there said:

"On the jurisdictional question we ruled on March 23, 1939, in Bossard v. McGwinn [D.C.], 27 F.Supp. 412, that we had jurisdiction over a third-party complaint, even though the plaintiff and the third-party defendant were residents of Pennsylvania. We adhere to that ruling in the instant case."

In Tullgren v. Jasper, D.C., 27 F.Supp. 413, 417, the court said:

"The answer to the question seems to depend upon the consideration whether the third-party practice in a particular case is an ancillary proceeding incidental to the main suit, or whether it is to be more properly regarded as a separate and independent new suit. If the former view prevails, then the jurisdiction is not wanting because the ancillary jurisdiction of the federal courts is well established as an essential attribute of their jurisdiction. See Compton v. Jesup, 6 Cir., 68 F. 263, by Taft when Circuit Judge; Alexander v. Hillman, 296 U. S. 222, 239, 56 S.Ct. 204, 80 L.Ed. 192; Rose, Federal Jurisdiction and Procedure, Ch. 14. It is true that the ancillary jurisdiction of the federal courts in the sense that the term is here used is most frequently based on the possession by the court of a res, and the necessity of doing complete justice in its final disposition among all parties interested; or in supplementary proceedings necessary to make effective the orders, judgments and decrees of the court. The type of suit we are here dealing with is, of course, not a suit in rem but in personam; but it is by no means certain that the nature of ancillary jurisdiction must be limited to a case where the court has possession of a res, or a supplementary proceeding to enforce a valid judgment. We are here dealing with procedural matters only, and there is very substantial ground for the view that as the general jurisdiction of the court

properly attached under constitutional and statutory provisions to the suit between the original plaintiff and the original defendant, it should proceed to do final and complete justice as between all parties affected by or liable on account of the same set of facts.

"There are federal decisions rendered prior to the promulgation of the new rules which have some tendency to support the view that jurisdiction does not exist where there is not diversity of citizenship between the original defendant and the third-party defendant. These cases dealt with third-party practice arising under various state statutes applied by the federal courts under the Conformity statute, 28 U.S.C.A. § 724, now superseded by the new rules. It will be found, however, on examination of the cases that most, if not all, of them dealt with situations where the cross-complaint of the original defendant against the third-party defendant injected a new and distinctly different cause of action than that involved in the main suit between the plaintiff and the original defendant. [Citing cases.] On the other hand the only decisions so far noted under the new rules have taken the view that in a case such as the present, the third-party practice should be considered ancillary to the main suit and therefore not open to the general jurisdictional objection. Judge McClintic, in the Southern District of West Virginia so held in the case of Crum v. Appalachian Electric Power Co. [D.C.], 27 F.Supp. 138. And a similar decision was made by Judge Schoonmaker, in the Western District of Pennsylvania, March 23, 1939, in the case of Bossard v. McGwinn, [D.C.], 27 F.Supp. 412."

■ The primary object of course of Rule 14 is in all cases to avoid circuity of action, and thus finally in one litigation to dispose of the entire subject matter arising from a particular set of facts, and accomplish ultimate justice for all concerned with economy in litigation, but without prejudice to the rights of another.

In the case of Satink v. Holland Township, D.C., 28 F.Supp. 67, 71, the court there said:

"There have developed two schools of thought among the courts in the application of the Rules of Civil Procedure with reference to the joinder of third party defendants. The cases, F. & M. Skirt Co., Inc., v. A. Wimpfheimer & Bro., Inc., D.C., 27 F.Supp. 239, and King v. Shepherd, D.C.,

26 F.Supp. 357, hold that third-party complaint practice does not extend venue or affect the jurisdictional requirement of diversity of citizenship. These cases rely on Rule 82 which provides as follows: 'These rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the venue of actions therein.' To conform with these cases it would be necessary to conclude that the proposed third-party defendants (the owner and driver of the automobile) cannot be joined because they are residents within the same state as plaintiff.

"Seemer v. Ritter, D.C., 25 F.Supp. 688; Crum v. Appalachian [Electric] Power Co., D.C., 27 F.Supp. 138; Bossard v. McGwinn, D.C., 27 F.Supp. 412, and Kravas v. Great Atlantic & Pacific Tea Co., D.C., 28 F.Supp. 66, are cases adopting a rule contrary to the principles set forth in the above cases. These cases hold that the third-party claim does not need independent jurisdictional grounds for support, as the claim is only ancillary to the primary claim."

See, also, Morrell v. United Air Lines Transp. Corp., D.C., 29 F.Supp. 757; Lewis v. United Air Lines Transp. Corp., D.C., 29 F.Supp. 112, which discusses at length the question of independent and ancillary jurisdiction; Schram v. Roney, D.C., 30 F.Supp. 458, where all of the cases are collected, and where the District Judge has very ably considered the jurisdictional question.

■■ I agree with the reasoning in the cases which hold that where jurisdiction exists as between the original parties, then the third party claim does not require independent jurisdictional grounds for support, as the claim is only ancillary, and I so hold in the instant case.

■ Objection is also made that the claim of liability on the part of the third party defendants arises on a contract which is separate and distinct from the cause of action forming the basis of plaintiff's suit.

Rule 13(g) provides as follows: "Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

In the case of Kravas v. Great Atlantic & Pacific Tea Co., supra, where a like objection was urged, the court said: "The second objection to the third-party complaint is made because of the alleged claim of liability of the third-party defendants arising on a contract which is separate and distinct from the cause of action forming the basis of plaintiffs' suit. We see no merit in this contention, because the rule permits a defendant to bring in a third party, 'who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him.' "

This is the exact situation we have in the instant case. Counter-claimants have set up by their counter-claim a defense arising on a contract, while plaintiff's suit against him is on a negotiable instrument, but it should be borne in mind that in the Federal Courts we now have but one form of action.

The items set out in the counter-claim, on which counter-claimants seek an affirmative judgment against the United States and the other third party defendants, are of course no defense to the suit of the United States which seeks to recover the amount of the promissory note. The counter-claim does not charge fraud in the execution of the note, except by implication. The answer, incorporated by reference in the counter-claim, does set out that Jackson procured the signing of the note by representing to counter-claimants that it was a document, the signing of which was necessary in order that the stoker might be installed on their premises for a sixty-day trial period. There is also a further allegation that persons whose names are unknown to counter-claimants induced them to sign certain other documents the contents of which were and are unknown to them. (Proof concerning these allegations, if sufficient, might establish such a defense to the suit on the note as is contemplated by Section 11, Chapter 98, of the Illinois Negotiable Instruments Act, Ill.Rev.Stat.1941, which provides):

"If any fraud or circumvention be used in obtaining the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee of such instrument."

It is not shown that Jackson was ever the holder of the note here in question, but surely fraud in its execution, if proved against Jackson, would be a defense which counter-claimants could urge against the claim of the United States, which holds the note and has the rights of a holder in due course.

■ I believe that the counter-claim does state a good cause of action against S. C. Jackson, doing business as Community Electric Shop. He is the dealer who installed the stoker and made the representations and guarantees concerning it and its satisfactory operation; and who is alleged to have procured the counter-claimants to sign the note in the belief that it was a document which was necessary in order that the stoker might be installed for sixty days on trial. If fraud in the execution of the note is proven, this would amount to a defense which may be urged in the original suit of the United States on the note.

The motion of S. C. Jackson, doing business as Community Electric Shop, is denied, and S. C. Jackson is required to answer the counter-claim within thirty days.

■ There is nothing in the complaint to show that the C. I. T. Corporation or the Iroquois Coal Company were not innocent holders of the note, without notice of any infirmities. It is not alleged that they made any of the representations, allegations or guarantees concerning the stoker and its satisfactory operation, or had anything to do with procuring the execution of the note.

The C. I. T. Corporation and the Iroquois Coal Company are therefore dismissed as third party defendants, and their motions to strike as to them are allowed.

The motion of the United States to dismiss the counter-claim is also denied, and it is required to answer the counter-claim within thirty days.