**In re Jack A. LOFSTROM, Debtor.**

**ILLINOIS REGIONAL BANK, n/k/a Old Kent Bank, N.A., Plaintiff,**

**v.**

**Jack A. LOFSTROM, Defendant.**

**No. 91 C 4273.**

United States District Court,
N.D. Illinois, E.D.

Oct. 31, 1991.

Joel Charles Solomon, Grossman, Solomon & Fielkow, Lincolnwood, Ill., for plaintiff.

Phillip Daniel Levey, Phillip D. Levey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff-appellant Illinois Regional Bank, n/k/a Old Kent Bank, N.A. ("IRB" or "bank") appeals from the bankruptcy court's decision discharging defendant-appellee Jack Lofstrom's debt to IRB. The bank maintains that, because it followed its customary lending practice in making a $50,000 loan to Lofstrom and because it reasonably relied on Lofstrom's false representation that he was not subject to any pending litigation (when he was actually a defendant in four lawsuits), the bankruptcy court erred in discharging the debt. For the reasons set forth below, we disagree, and affirm the bankruptcy judge's opinion.

The standard of review is as follows:

On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankr.R. 8013 (11 U.S.C.A. Rule 8013 (1991 Supp.)). That we are "convinced" that we would have decided the case differently is insufficient to justify reversing the bankruptcy court's decision; "where two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989) (citations omitted).

The critical facts in this matter are fairly straightforward. Sometime in early 1989, Ron Mueller, president of Florsheim Shoe Co., advised Lofstrom to contact the bank in regard to securing a loan. Lofstrom needed funds to finance a business deal. Mueller specifically referred Lofstrom to Emil Schubert, IRB's senior vice president. Schubert subsequently referred Lofstrom to Ralph Treccia, IRB's vice president in charge of corporate lending. Lofstrom had never dealt with IRB prior to this interaction.

Lofstrom met with Treccia on March 16, 1989. Lofstrom gave the bank officer a personal financial statement, photocopies of his 1986 and 1987 tax returns, and a packet of information about his current real estate development projects. Treccia reviewed these materials, and discussed with Lofstrom possible sources of repayment of the loan. Treccia also obtained a TRW credit report on Lofstrom.

The financial statement form asked the following question: "Do you have any contingent liabilities. If so, describe." Lofstrom answered: "None." The form also asked about pending litigation: "Are you a defendant in any suits or legal actions?" Lofstrom again answered: "None." This information was false. Lofstrom was a defendant in four separate lawsuits in state court; indeed, Lofstrom was personally served with a summons in lawsuit number four the very morning of his meeting with Treccia. The TRW credit report did not reveal that Lofstrom was a defendant in any case.

On March 17, 1989, the bank informed Lofstrom by letter that his request for $50,000 had been approved. On March 20, Lofstrom executed a 90–day promissory note in the amount of $50,000; he received the funds two days later, on March 22. Treccia's notes on the Lofstrom loan include the following language:

> I believe Mr. Lofstrom to have the wherewithal to merit this accommodation and it is strictly being made due to Emil Schubert's belief that additional business may come from Mr. Mueller at Florsheim who referred in Mr. Lofstrom.

Lofstrom failed to make any payments on the promissory note, and a judgment was entered in state court on October 3, 1989 against Lofstrom for $54,308.31.

Under 11 U.S.C. § 523(a)(2), a debtor will not be allowed to discharge a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

> (iv) that the debtor caused to be made or published with intent to deceive; ....

11 U.S.C. § 523(a)(2) (1988).

Lofstrom argues that the bank did not reasonably rely on the (false) information he supplied, and that Treccia's notes support that argument. IRB claims that it did reasonably rely on Lofstrom's representations that he was not a defendant in any pending lawsuit in granting him the $50,-000 loan. Further, the bank maintains that it followed its standard loan procedure in making the loan, a procedure that includes a personal meeting between the loan officer and the applicant, a review of the submitted financial statement and tax return(s), and review of an independent credit report. Thus, the bank contends, Lofstrom's debt should be nondischargeable.

■ We find that the bankruptcy court's opinion is not clearly erroneous, and affirm. A credit arguing nondischargeability must prove by the preponderance of the evidence that the debtor made, with the intent to deceive, a materially false statement in writing regarding his financial condition and that the creditor reasonably relied on those statements to its detriment. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The bank's failure to verify the value of the assets and amount of liabilities listed in Lofstrom's financial statement and failure to obtain any title commitments for real estate listed in the statement, among other things, coupled with its unfamiliarity with Lofstrom and the clear language in Treccia's notes regarding future business from Florsheim Shoes, vitiates the reasonable reliance argument. We agree with the bankruptcy judge that "the determining factor in making the loan to Lofstrom was ... the Bank's desire to obtain future business from the Florsheim Shoe Company...." *In re Lofstrom*, No. 90 B 7365, slip op. at 5 (Bankr.N.D.Ill. May 22, 1991).

IRB's attempt to explain away Treccia's notes are unpersuasive. The bank suggests that the first part of the key passage—"I believe Mr. Lofstrom to have the wherewithal to merit this accommodation ..."—is the most important part. The

bankruptcy judge, however, having evaluated Treccia's testimony at a full evidentiary hearing, determined that what followed—"and it is *strictly being made* due to Emil Schubert's belief that additional business may come from Mr. Mueller at Florsheim who referred in Mr. Lofstrom" (emphasis added)—was the crux of this issue. We cannot say that such a finding is clearly erroneous. Treccia did not say that Lofstrom appeared to be a good risk and, by the way, his own superior at the bank had mentioned that maybe Mueller would send some of Florsheim's banking business to IRB. He said that the loan was "strictly being made" due to the Florsheim possibility. The notations about Lofstrom's "wherewithal," though appearing prior to the extended discussion about the Florsheim connection, appear to be an afterthought. In short, IRB has failed to prove by a preponderance of the evidence that its reliance on Lofstrom's financial statements was reasonable. The bankruptcy court's May 22, 1991 decision is affirmed. It is so ordered.