In re Carol K. **HURLEY,** f/k/a/ Carol **McClelland,** d/b/a Carol K. **Hurley, M.D.,** Whitehorse Gallery 1932 Halsted Building GMC **Construction, Debtor.**

Carol K. **HURLEY, Plaintiff,**

v.

Gene **GAERTNER, M.D., Defendant.**

No. 92 C 8427.
Bankruptcy No. 88 B 1939.
Adv. No. 91 A 559.

United States District Court,
N.D. Illinois, E.D.

Aug. 18, 1993.

---

Edward T. Graham, Wheaton, IL, for Gene Gaertner, M.D., appellant.

Deborah L. Thorne, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Carol K. Hurley, appellee.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

### I. INTRODUCTION

This case comes before the court on appeal from a decision issued on November 13, 1992, by Judge Barliant of the United States Bankruptcy Court for the Northern District of Illinois. 148 B.R. 298. This case is the second appeal stemming from a bankruptcy case involving Doctors Carol K. Hurley ("Hurley") and Eugene Gaertner ("Gaertner"), and a trust fund established for the benefit of their son, Michael Charles Gaertner ("Michael").

### II. BACKGROUND

Earlier this year, the court considered defendant Gaertner's appeal of an entry of summary judgment by the bankruptcy judge in favor of plaintiff, Hurley. Because that case involves facts also at issue here, a cursory summary of that dispute follows. The first appeal in this case involved the interpretation of a trust established by Hurley for the benefit of Michael. Hurley provided a gift of $25,000 to the trust. Article IV of the trust provided that "[o]n May 14, 1991, or upon the death of the Grantor's son, which ever shall first occur, the Trustee shall distribute the principal of the Michael Charles Gaertner Gift Trust (exclusive of any undistributed income, to the Grantor if she then be living...."

When May 14, 1991 arrived, and Michael remained among the living, Gaertner refused to turn the $25,000 over to Hurley. Gaertner argued that in exchange for his decision to take custody of Michael, Hurley made an oral agreement to amend the terms of the trust, in effect, relinquishing her reversionary interest in the trust in consideration for defendant's assumption of Michael's custody and his acceptance of the responsibility for Michael's medical and educational needs.

Hurley sued Gaertner seeking enforcement of the trust agreement and moved for summary judgment. After considering arguments from both parties, the bankruptcy judge entered summary judgment in Hurley's favor, holding that Hurley could only have waived her right to the principal in the trust when that right matured in May 1991.

Gaertner appealed that decision and this court reversed and remanded, finding that Hurley's interest in the trust was a future interest which was alienable and that a genuine issue of fact existed as to whether she had agreed to abandon her interest in the $25,000.

However, while Gaertner promptly appealed the entry of summary judgment in Hurley's favor, he neglected to procure a stay of the bankruptcy court's proceedings. Consequently, while Gaertner's appeal was under consideration by the court, Hurley commenced post-judgment collection proceedings with a non-wage garnishment against Gaertner. These proceedings included interrogatories to Affiliated Bank ("Affiliated"), where Gaertner had a bank account, regarding Affiliated's indebtedness to Gaertner, and an affidavit stating Hurley's belief that Affiliated was indebted to Gaertner. Upon receipt of the affidavit and interrogatories, the clerk of the bankruptcy court issued a non-wage garnishment on Affiliated.

Affiliated indicated that it was indebted to Gaertner in the amount of $25,000 by means of a checking account and notified Gaertner that "it was obligated to debit his checking account $25,000 and that it would hold the funds pending judgment or further hearing." Affiliated, after receiving a release and satisfaction of the underlying judgment, sent Hurley's attorney a check for $26,155.84.

Gaertner then demanded that Affiliated reimburse his bank account. Affiliated consequently asked Hurley to return the funds, which Hurley declined to do. Gaertner and Affiliated returned to bankruptcy court where Affiliated sought a court order requiring Hurley to return the funds and, in the alternative, "a *nunc pro tunc* judgment in garnishment ratifying Affiliated's payment to Hurley." Gaertner requested that the court "quash the garnishment summons and invalidate the garnishment proceedings."

In its opinion, the bankruptcy court noted that while all three parties to this dispute claimed to be free from fault and blame, and, in fact, rested on all parties as Hurley, Gaertner and Affiliated had all committed errors in the case. As Judge Barliant succinctly put it, "[i]f this Court sought to resolve this dispute in favor of the party without fault, there could be no winner." *In re Hurley*, 148 B.R. 298, 301 (Bankr.N.D.Ill.1992). Specifically, the court noted that Hurley erred by delivering a " 'release' of the underlying judgment instead of a release of judgment in garnishment." Affiliated paid Hurley "based on this facially inapplicable release and without obtaining an order from this Court authorizing payment" and Gaertner appealed the underlying judgment without obtaining a stay. *Id.*

The bankruptcy court denied both Affiliated's motion for the return of the funds and Gaertner's motion to quash. The court entered final judgment for $26,155.84 against Affiliated and in favor of Gaertner, as nominal plaintiff in garnishment, and declared the judgment in garnishment against Affiliated satisfied by Affiliated's payment to Hurley.

## III. ANALYSIS

Gaertner is now before the court seeking dismissal of the garnishment proceedings, a quashing of the garnishment summons, and a return to the status quo prior to Affiliated's payment to Hurley.

In reviewing an appeal from the bankruptcy court, this court reviews questions of law *de novo*. The bankruptcy court's findings of fact, however, are set aside by the court only if they are clearly erroneous. "Due regard" is given to the opportunity of the bankruptcy court to judge the credibility of the witness. *Ill. Regional Bank v. Lofstrom*, 133 B.R. 428 (N.D.Ill.1991); *North Atlantic Fishing, Inc. v. Geremia*, 153 B.R. 607, 610 (D.R.I.1993); *see also* Bankr.R. 8013 (11 U.S.C.A. Rule 8013 (1991 Supp.)). The errors Gaertner alleges in this appeal do not involve findings of fact but rather interpretations of law. The alleged errors are three in number. First, Gaertner argues that the bankruptcy court erred in failing to find the garnishment proceedings void *ab initio*. Second, Gaertner contends that the bankruptcy court erred by declining to rule that the Illinois Garnishment Statute is unconstitutional on its face and as applied. Third, Gaertner contends that the bankruptcy court erred in failing to find that Affiliated violated the Illinois Garnishment Statute and is, therefore, liable to Gaertner for its unauthorized release of Gaertner's funds. Each of Gaertner's arguments is flawed and the court affirms the decision of the bankruptcy court.

### A. The Garnishment Proceedings Were Void *Ab Initio*

Gaertner argues that the garnishment proceedings in this case were void *ab initio* because plaintiff failed to comply with the jurisdictional prerequisites of Federal Rule of Civil Procedure 69(a) ("Rule 69(a)"). According to Gaertner, Rule 69(a) requires that a writ of execution be served on a judgment debtor for purposes of enforcing a money judgment unless the court provides otherwise. Gaertner argues that a writ was never executed in this case and that he was never notified that plaintiff had instituted garnishment proceedings until he received a letter from Affiliated on May 29, 1992.

Gaertner argues that Hurley also failed to comply with the alternative to the writ of execution provided for in Section 12–111 of the Illinois Code of Civil Procedure (735 ILCS 5/12–111) ("section 12–111"). Under Section 12–111, notice to a judgment debtor is provided by "delivering a certified copy

of judgment to the sheriff for service on judgment debtor."

■ The court first considers Gaertner's federal civil procedure argument and then turns to his state civil procedure claim.

Rule 69(a) provides in part:

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Gaertner argues that the first sentence of Rule 69(a) governs here. Gaertner reads Rule 69(a) "clearly and unequivocally" to require that the enforcement of a judgment for the payment of money be by writ of execution unless the court directs otherwise. Gaertner argues that supplementary proceedings "may" be pursued to enforce a judgment, however, the court must first direct that such proceedings are appropriate and such a court declaration was absent in this case.

This interpretation, however, conflicts with the language of Rule 69(a). The second sentence of Rule 69(a) does not include the word "may." Rather, it states that supplemental proceedings "shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought...."

Moreover, if obtaining a writ of execution were the exclusive method of proceeding here, Rule 69(a) would be inherently contradictory; the first sentence would directly conflict with the second sentence.

*See Grenada Bank v. Willey,* 694 F.2d 85, 87 n. 2 (5th Cir.1982). In *Grenada,* the court rejected the appellant's argument that Rule 69(a) required a writ of execution as the exclusive means of enforcing a judgment.[1] *Id.* The *Grenada* court noted that in the absence of an applicable federal law, "the practices and procedures of Mississippi must be used in executing the judgment." *Id.*

■ In Illinois, garnishment proceedings are "supplementary proceedings." *In re Marriage of McElwee,* 230 Ill.App.3d 714, 172 Ill.Dec. 377, 380, 595 N.E.2d 738, 741 (1992). As a consequence, plaintiff should have followed state procedures in instituting garnishment proceedings against defendant.

Gaertner also cites *Robbins v. Labor Transp. Co.,* 599 F.Supp. 705 (N.D.Ill.1984), for the proposition that " 'a federal court should not ... enforce a money judgment by contempt or methods [o]ther than a writ of execution except in cases where established principles so warrant.' " *Id.,* at 707, *quoting* 7 J. Moore, *Moore's Federal Practice* ¶ 69.03(2) at 69–11. However, the *Robbins* court was interpreting only the first sentence of Rule 69(a), and this interpretation was made in circumstances very different than those presented by the instant case.

In *Robbins,* trustees brought suit against defendant seeking an injunction to require defendant to make employer contributions to an employee trust fund. After a trial in which the judge found in plaintiff's favor, defendant was ordered to make back contributions to the fund and to pay plaintiffs' attorney's fees. After failing to do so, plaintiffs returned to court on a motion for an order to show cause why defendant should not be held in contempt for its failure to comply with the court's judgment.

---

1. In his reply brief, defendant argues that *Grenada Bank v. Willey,* 694 F.2d 85 (5th Cir.1982) is inapposite. Defendant argues that it merely stands for the proposition that "under the Mississippi law, garnishment is a proper means of charging the interests of a limited partnership." Appellant's Reply Brief at 7. In actuality, the *Grenada* court considered and rejected appellant's contention that the first sentence of Rule 69(a) made a writ of execution the "exclusive" means of enforcing a judgment. Rather, the *Grenada* court ruled that Mississippi practices and procedures should be applied in the case.

It was in the context of deciding whether to hold the judgment debtor in contempt that the *Robbins* court analyzed Rule 69(a). As the court was seeking to enforce a judgment for the payment of money and was not pursuing a supplementary proceeding, as in the instant case, it only analyzed the first sentence of Rule 69(a). It did not deal with the relationship between the first sentence and the second sentence which is at issue in this case.

■ Gaertner claims that plaintiff also failed to follow state procedures in initiating the garnishment action. Under Illinois law in effect at the time of the garnishment in this case, garnishment proceedings were commenced upon the filing of an affidavit by the judgment creditor that "the affiant believes any person is indebted to the judgment debtor other than for wages." *See* Ill.Rev.Stat., ch. 110, ¶¶ 12–701, 12–705. Upon the filing of a proper affidavit, the clerk of the court issued summons on the garnishee.[2] These procedures were followed in this case. Hurley filed the garnishment affidavit and it was served on Affiliated. Affiliated, in turn, notified Gaertner of the garnishment.

Consequently, for all the above reasons, the court agrees with the bankruptcy court that there is no jurisdictional defect in Hurley's garnishment proceeding.

**B. Illinois Garnishment Statute is Facially Invalid**

■ Gaertner's second argument is that the garnishment summons should be quashed because the Illinois non-wage garnishment statute in effect when his bank account was garnished has twice been declared unconstitutional. *See Scott v. Danaher,* 343 F.Supp. 1272 (N.D.Ill.1972); *Jacobson v. Johnson,* 798 F.Supp. 500 (C.D.Ill.1991). The *Jacobson* court ruled that the non-wage garnishment statute denied a judgment debtor due process where he was precluded from claiming that a portion of his bank account derived from Social Security disability insurance was exempt from garnishment because the act failed to provide him with notice of the garnishment.[3]

The statute found unconstitutional in *Jacobson* was replaced by a new non-wage garnishment act which became effective January 7, 1993. This new act requires that judgment debtors be notified in writing within two business days after garnishment summons is served upon the garnishee, and specifies that a judgment debtor may request a hearing to "dispute the garnishment or seek exemptions for certain monies or property." 735 ILCS 5/12–711(b).

**2.** The new non-wage garnishment statute retains this procedure but provides for additional and more specific notice requirements. *See* 735 ILCS 5/12–701 *et seq.*

**3.** The court notes, however, that the Illinois Supreme Court has ruled that the failure to provide a judgment-debtor with notice in a non-wage garnishment does not violate a debtor's due process rights where the judgment debtor was served with process or entered his appearance in the underlying damage suit. *Zimek v. Ill. Nat'l Casualty Co.,* 370 Ill. 572, 19 N.E.2d 620 (1939). The *Zimek* court interpreted the garnishment statute which preceded the statute at issue in this case. It, like the statute at issue here, did not require that a judgment-debtor be notified of garnishment proceedings.

In the case giving rise to the *Zimek* decision, plaintiff obtained a $5,000 judgment against Zimek for injuries received when a car driven by Zimek collided with a car in which plaintiff was a passenger. Plaintiff attempted and failed to obtain satisfaction against Zimek. Plaintiff then instituted garnishment proceedings against Zimek's insurance agency, Illinois National Casualty Company ("Illinois National"). Judgment was granted in plaintiff's favor and Illinois National appealed the judgment. In upholding the constitutionality of the garnishment statute in the face of the contention that it failed to accord due process by not providing notice of the garnishment proceedings to the judgment debtor, the Illinois Supreme Court noted that garnishment was a "remedial" process "designed to reach property belonging to the judgment debtor after ordinary execution has failed." *Zimek,* 370 Ill. at 574, 19 N.E.2d 620. Consequently, Zimek was not entitled to notice of the garnishment proceedings because he had notice of the underlying damage suit and had filed an appearance in the case. The Illinois Supreme Court stated: "[Zimek's] knowledge of the principal action against him is sufficient warning that his adversary may be expected to take all available steps to obtain satisfaction of any judgment rendered." *Id.*

However, since this new statute was not yet enacted at the time of the garnishment in this case, and there is no indication that it is retroactive, Hurley cannot be held to the specific requirements of that law.

 Nor is this court bound by the decisions of our sister courts in this district and the Central District of Illinois holding the non-wage garnishment statute unconstitutional. *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987). Furthermore, this court, unlike its sister courts, declines to reach the issue of the constitutionality of the statute. Federal courts are courts of limited jurisdiction and they have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *County Court of Ulster Cty. v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). In the instant case, the court holds that Gaertner was accorded due process in the garnishment proceedings and thus a determination of whether the non-wage garnishment statute is constitutional is not required for a resolution of this case.

On May 29, 1992, the date that Affiliated completed its answers to the garnishment interrogatories filed by Hurley, Affiliated notified Gaertner via the mail that it had been served with a garnishment summons and that his bank account had been debited. Affiliated also notified Gaertner that it would hold the debited funds until a judgment was entered or a further hearing was held in bankruptcy court.

Consequently, Gaertner received notice that his account was being garnished shortly after the garnishee (Affiliated) had been served with the garnishment summons. As the *Jacobson* court recommended in its exposition of the procedures required to make the garnishment statute comport with due process, Gaertner received notice of the garnishment of his account before the funds were disbursed.[4]

Having been provided with notice of the garnishment before his funds were dispersed, Gaertner could also have sought a hearing on the garnishment. Specifically, Gaertner could have moved to quash the garnishment summons or he could have moved under Federal Bankruptcy Rules 7062 and 8005 for a Stay of Proceedings to Enforce a Judgment or a Stay Pending Appeal (of the underlying judgment), respectively. Gaertner, however, took no action.

The court finds that Gaertner was accorded due process in the garnishment action and, therefore, will not quash the garnishment.

### C. Affiliated Is Liable to Gaertner for Unauthorized Release of Money

 Gaertner's third and final argument is that Affiliated owes him the funds it released to Hurley because it was not authorized to release the $25,000 absent an entry of judgment in garnishment. Affiliated consequently breached its duty under section 12–707 of the Illinois Code of Civil Procedure (735 ILCS 5/12–707 "Duties of a Garnishee"). As a result, defendant seeks a court order that the parties be returned to the status quo *ante.*

Affiliated admits that it erred and prematurely released payment to plaintiff. On May 29, 1992, Affiliated notified defendant that it was holding $25,000 in defendant's funds pursuant to a garnishment and would remit the funds upon receipt of a "Satisfaction of Judgment" filed with the court. Plaintiff, however, did not submit a "Satisfaction of Judgment" to Affiliated

---

**4.** The *Jacobson* court noted a possible solution to the due process deficiencies of the non-wage garnishment statute. The *Jacobson* court observed, "[i]f Johnson [the judgment debtor] had been notified of the garnishment proceedings in this case, then he could have sought a hearing to explain that funds in his bank account were exempt as Social Security benefits, and the danger of erroneous deprivation would have been diminished." *Jacobson,* 798 F.Supp. at 505.

The *Jacobson* court also indicated that due process could have been comported with had notice of the non-wage garnishment been given to the judgment debtor shortly after notice had been provided to the garnishee. Translating these observations into practical suggestions, the court stated, "[u]nder such a scenario, the judgment debtor would receive notice of the garnishment after the funds were frozen but before the funds were disbursed." *Id.*

but rather forwarded a release of the underlying judgment. In remitting the funds to plaintiff based on this release, and in the absence of an order in garnishment having been entered by the bankruptcy court, Affiliated took the risk that it would not be able to obtain "a discharge of Gaertner's claim against it" if the court failed to enter a judgment in garnishment.

The bankruptcy court, relying on long-established precedent, however, entered judgment in garnishment and credited Affiliated's payment against the judgment rendered in its November 13, 1992 ruling. *Sandburg v. Papineau*, 81 Ill. 446 (1876). The bankruptcy court argued that all the conditions for such a judgment were met and, therefore, entry of the judgment was correct.

The court cannot find fault with the bankruptcy court's action here. The Illinois Supreme Court in *Sandburg* observed that courts possess the power "in all cases to compel credits on judgments or executions, where it would be illegal or inequitable to proceed to collect the amount claimed." *Sandburg*, 81 Ill. at 449. As the bankruptcy court noted, failure to provide Affiliated with credit for its payment would have resulted in a windfall to Gaertner.

In arguing that the parties should be returned to the status quo *ante*, Gaertner contends that *In re Marriage of Souleles*, 111 Ill.App.3d 865, 67 Ill.Dec. 485, 444 N.E.2d 721 (1st Dist.1982), is controlling. In *Souleles*, an attorney instituted a garnishment action in order to recover fees for a divorce case he handled. The attorney sought to garnish a savings account held jointly by Mr. and Mrs. Souleles, the couple who had been divorced. The defendant bank relinquished the funds to the attorney. The court, however, ruled that the disbursement of the funds was without authority and, therefore, restored the parties to the status quo. The court found that a valid garnishment judgment had not been entered. The rationale for the court's decision was that "[t]he procedures governing a garnishment proceeding contemplate that parties with an interest in the subject property must be given notice and a full opportunity to present their claims." *Souleles*, 67 Ill.Dec. at 489, 444 N.E.2d at 725, *citing Meggison v. Stevens*, 21 Ill.App.3d 505, 316 N.E.2d 297 (1974). The petitioner in *Souleles* and his attorney had an interest in the bank account (this attorney had also been awarded fees for work done on behalf of petitioner) but received no notice of the garnishment. The court ruled that absent this notice and an opportunity to make their claims, no valid garnishment judgment was entered and the parties should be returned to the status quo. *Id.* 67 Ill.Dec. at 489–90, 444 N.E. at 725–26.

The bankruptcy court in the instant case acted in conformity with the teachings of *Souleles*. The bankruptcy court only entered its judgment in garnishment after allowing Gaertner to present his objections to the garnishment and after considering these objections. The conditions for the entry of a judgment garnishment outlined in *Souleles* had been met: Gaertner had both notice of the garnishment and the opportunity to present his claims. The actions of the bankruptcy court in entering judgment in garnishment were proper.

■ Gaertner makes one additional argument that does not fit neatly into the three major issues on appeal in this case. Gaertner argues that he did not seek to quash the garnishment or seek a stay of enforcement of the underlying judgment because Affiliated had informed him that it would hold the funds "pending judgment or further hearing," and that he was unaware that Hurley and Affiliated were "negotiating" for the release of the funds.

Gaertner at this point in the case had appealed the underlying decision by the bankruptcy court. If Gaertner wanted to protect the funds in his checking account from garnishment, the Federal Rules of Bankruptcy Procedure provided such a mechanism: a stay pending appeal. *See* Federal Rule of Bankruptcy Procedure 8005 ("Rule 8005"). While Rule 8005 does not require that an appellant seek a stay of a case pending an appeal, "[t]he consequence of failing to obtain a stay is that the prevailing party may treat the judg-

ment or the order of the bankruptcy judge as final, notwithstanding that an appeal is pending." *Collier on Bankruptcy,* ¶ 8005.03 (15th ed. 1993). Absent a stay, Hurley had a right to treat the bankruptcy court decision as final and Gaertner cannot blame the other parties for his failure to protect his interests.

## IV. CONCLUSION

For the reasons cited above, defendant's motion to dismiss the garnishment proceedings, quash the garnishment summons, and restore the parties to the status quo is denied. The decision of the bankruptcy court is

AFFIRMED.

IT IS SO ORDERED.