**In re William W. REEDY, Debtor.**

**Christine S. Reedy, Plaintiff,**

v.

**William W. Reedy, Defendant.**

**Bankruptcy No. 98–30974.**
**Adversary No. 98–3070.**

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 5, 1999.

Bailey, Roberts & Bailey, P.L.L.C., N. David Roberts, Jr., Knoxville, Tennessee, for plaintiff.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tennessee, for defendant.

### MEMORANDUM ON DEFENDANT'S MOTION TO QUASH AND VACATE GARNISHMENT

RICHARD S. STAIR, Jr., Chief Judge.

The court has before it the Motion to Quash and Vacate Garnishment (Motion) filed by the Defendant, William W. Reedy, on September 8, 1999, asking the court to "quash and vacate *ab initio*" the Writ of Execution to the United States Marshal (Writ of Execution) issued by the clerk on June 29, 1999. The Writ of Execution was issued upon application of the Plaintiff in her attempt to enforce the Judgment entered against the Defendant in this nondischargeability action on March 19, 1999. The Defendant contends that the bankruptcy court had no jurisdiction to issue the Writ of Execution.[1] The Motion was

---

**1.** Although not addressed in the memorandum supporting the Motion, counsel for the

accompanied by a Memorandum in Support of Motion to Quash Garnishment. The Plaintiff filed a Response to Defendant's Motion to Quash and Vacate Garnishment on September 24, 1999, opposing the Motion. The court heard oral argument on September 27, 1999.

## I

The Plaintiff filed the Complaint commencing this adversary proceeding on July 1, 1998, seeking a determination that certain financial obligations imposed upon the Defendant in a divorce action commenced in the Circuit Court for McMinn County, Tennessee, in 1995 were nondischargeable under 11 U.S.C.A. § 523(a)(5) (West 1993), or alternatively, were nondischargeable under 11 U.S.C.A. § 523(a)(15) (West Supp.1999). The amount of the Defendant's obligations to the Plaintiff was not quantified by the state court in its Final Decree entered on February 29, 1996, or in a subsequent Agreed Order entered on June 18, 1997.

Subsequent to a trial on February 23, 1999, the court entered the following Judgment on March 19, 1999:[2]

> This matter was heard by the court on February 23, 1999, on the Complaint filed by the Plaintiff, Christine S. Reedy, on July 1, 1998. For the reasons stated in the memorandum opinion dictated by the court from the bench on March 19, 1999, containing findings of fact and conclusions of law as required by FED. R.CIV.P. 52(a), it is ORDERED, ADJUDGED, and DECREED as follows:
>
> 1. The obligation of the Defendant, William W. Reedy, to pay the Plaintiff, Christine S. Reedy, alimony *in solido* pursuant to the terms of the Agreed Order entered in the parties' divorce

action in the Circuit Court for McMinn County, Tennessee, No. 20554, on June 18, 1997, includes the sum of $26,488.36 the Plaintiff was required to pay the Internal Revenue Service in satisfaction of tax liens attributable to obligations of the Defendant and $7,147.46 the Defendant was required to reimburse the Plaintiff for her payment of the second mortgage encumbering the Plaintiff's farm. The Defendant's obligation to the Plaintiff, totaling $33,635.82, is nondischargeable under 11 U.S.C. § 523(a)(5).

> 2. The Plaintiff is awarded prejudgment interest at the rate of ten percent (10%) per annum pursuant to TENN.CODE ANN. § 47–14–123 (1995) on that portion of the Judgment awarded her in paragraph one above that represents the Defendant's obligation to reimburse the Plaintiff for tax liens she was required to pay, *i.e.,* prejudgment interest is awarded on the sum of $9,249.17 from November 27, 1996, and prejudgment interest is awarded on the sum of $17,239.19 from November 21, 1997. This prejudgment interest is also nondischargeble under 11 U.S.C. § 523(a)(5).

> 3. As to all other obligations of the Defendant asserted by the Plaintiff to be nondischargeable in her Complaint filed July 1, 1998, the obligations are DISCHARGED.

The Defendant did not appeal the Judgment.[3]

On June 25, 1999, the Plaintiff filed an Application for Writ of Execution and Garnishment requesting the issuance of "an Execution and Garnishment ... to satisfy a judgment ... against the defendant ... for $33,635.82, interest in the amount of

Defendant asserted in oral argument that the execution was also inappropriate because the court did not grant the Plaintiff a money judgment. The court, for reasons hereinafter discussed, disagrees.

**2.** The Judgment is accompanied by a memorandum opinion dictated from the bench on March 19, 1999, which was transcribed and filed on March 22, 1999.

**3.** The Defendant, an attorney, represented himself throughout the trial. However, subsequent to the trial, he retained his present counsel who, on March 29, 1999, filed a Motion to Alter or Amend Judgment on the Defendant's behalf. That motion was denied pursuant to an Order entered on April 20, 1999, and no appeal was thereafter taken from the March 19, 1999 Judgment.

$5,297.61, and costs of $0.00." On June 29, 1999, the clerk issued the Writ of Execution which directed a "levy upon the wages of the ... judgment debtor to satisfy a money judgment." On July 9, 1999, the garnishment was served by a United States Marshal on the Defendant's employer, the District Attorney General's Conference, in Nashville, Tennessee. On August 5, 1999, the garnishee answered the garnishment and remitted $1,095.71 from the Debtor's current wages. On September 3, 1999, the court entered an Order directing the clerk to pay the garnisheed wages to the Plaintiff and her attorney. On September 8, 1999, the Defendant filed the Motion presently before the court. On the same date, the court entered an Order directing, *inter alia*, that "[a]ny funds presently held or hereinafter received by the clerk pursuant to any Writ of Execution shall remain undistributed pending disposition of the Defendant's Motion."[4]

## II

Resolution of the Defendant's Motion requires the court's consideration of two issues. First, did the March 19, 1999 Judgment fixing the amount of the Defendant's nondischargeable obligation to the Plaintiff at $33,635.82, plus pre-judgment interest, constitute a money judgment? Second, did the court have jurisdiction to issue the June 29, 1999 Writ of Execution?[5]

■ It is clear that in the Sixth Circuit a bankruptcy court has the authority to enter a money judgment in a § 523 nondischargeability action. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir.1993) (A nondischargeability action is a "core proceeding" and "[a]s such, the

bankruptcy court has jurisdiction to adjudge the validity and amount of a claim together with its dischargeability."). The court, quoting Seventh Circuit authority, also reasoned:

> "[A]llowing the bankruptcy judge to settle both the dischargeability of the debt and the amount of the money judgment accords with the 'rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief.'" Because a party properly before a court of equity subjects himself "to all the consequences that attach to an appearance," the amount of [the debtor's] liability was properly determined by the Bankruptcy Court.

*Id.* at 966 (quoting *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir.1991) (quoting *Alexander v. Hillman*, 296 U.S. 222, 56 S.Ct. 204, 211, 80 L.Ed. 192 (1935))).

As defined by the Third Circuit:

> [A] money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.

*Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 275 (3rd Cir. 1984); *see also, Sam Daily Realty, Inc. v.*

---

4. On September 7, 1999, the Defendant's employer remitted the additional sum of $1,095.71 in response to the Writ of Execution. Upon agreement of the parties, the court entered an Order on September 30, 1999, directing the clerk to disburse "all proceeds of the garnishment" to the Plaintiff. This Order was entered "without prejudice to the position of either party."

5. In his oral argument before the court, Defendant's counsel seemed to acknowledge that the Motion would not lie if the March 19, 1999 Judgment is a money judgment. In response to a statement of the court that "I did have to determine the amount of the debt, as I recall," Defendant's counsel stated: "If Your Honor reads that as saying that you're entering judgment in favor of one party against the other party for a sum certain, then different results would follow."

*Department of Commerce and Consumer Affairs*, 57 B.R. 83 (Bankr.D.Hawai'i 1985).

■ The March 19, 1999 Judgment identified the Plaintiff as the party for whom the Judgment was being entered and the Defendant as the party against whom the Judgment was being entered. Additionally, the Judgment fixed the amount of the Defendant's obligation to the Plaintiff at $33,635.82 and determined that the Plaintiff was also entitled to pre-judgment interest on a portion of the Judgment. Clearly, the March 19, 1999 Judgment constitutes a money judgment.

### III

■ Rule 69 of the Federal Rules of Civil Procedure, incorporated into this adversary proceeding by Rule 7069 of the Federal Rules of Bankruptcy Procedure, provides in material part:

> (a) **In General.** Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed.R.Civ.P. 69(a).

In his Memorandum in Support of Motion to Quash Garnishment, the Defendant states that "§ 523 grants this Court only the jurisdiction to determine dischargeability and not the jurisdiction to manage, supervise, modify, and enforce the divorce decree. The latter remains the province of the state court." The court disagrees.

■ The court, by issuance of the Writ of Execution, does not seek to "manage, supervise, modify, and enforce the divorce decree." Rather, the Writ of Execution is designed to enforce the wholly-independent Judgment of the bankruptcy court. This is not a situation where the state court had predetermined the amount of the Debtor's liability and the court was called upon to determine only that the debt was or was not dischargeable. This court was required to determine the amount of the Debtor's nondischargeable obligation to the Plaintiff after hearing considerable proof on the issue.

> [T]he jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment is satisfied.... Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.

*Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). "This post-judgment jurisdiction, however, is limited to those actions that a court may take in that same action." *Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir.1986).

The Supreme Court has recognized that a federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually inter-dependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994) (citations omitted).

More recently, the Supreme Court stated:

> "[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). Ancillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," *ibid.*, but that primary lawsuit must contain an independent ba-

sis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims.... The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Kroger,* 437 U.S., at 377, 98 S.Ct. at 2404. *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 867, 133 L.Ed.2d 817 (1996) (citations omitted).

The above authority, coupled with Rule 69, persuades this court that it has ancillary subject-matter jurisdiction to reach money in order to enforce its judgments. *See American Freight Sys., Inc. v. Temperature Sys., Inc. (In re American Freight Sys., Inc.),* 173 B.R. 739, 742 (Bankr. D.Kan.1994) (Bankruptcy court has ancillary subject-matter jurisdiction over garnishments of third parties who admit they owe money to the judgment debtor.) (citing *Skevofilax v. Quigley,* 810 F.2d 378 (3rd Cir.1987) (en banc), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987)); *Hurley v. Gaertner (In re Hurley),* 148 B.R. 298 (Bankr.N.D.Ill.1992), *aff'd,* 158 B.R. 115 (N.D.Ill.1993) (Bankruptcy court had jurisdiction in ancillary proceeding to determine whether garnishment proceedings, authorized by Rule 69(a), were *void ab initio* for alleged failure to comply with state procedure.). *See contra HOC, Inc. v. McAllister (In re McAllister),* 216 B.R. 957, 963 (Bankr. N.D.Ala.1998) (Nondischargeable judgment could not be enforced by bankruptcy court which rendered judgment because court did not have "arising under," "arising in," or "related to" jurisdiction over the garnishment proceeding pursuant to 28 U.S.C.A. § 1334(b) (West 1994).).[6]

For the above reasons, the Defendant's Motion will be denied. All funds reached by the June 29, 1999 Writ of Execution will be distributed to the Plaintiff in satisfaction of the March 19, 1999 Judgment.

An order consistent with this Memorandum will be entered.

---

6. The court in *McAllister* treated the plaintiff's writ of garnishment as an action wholly independent of the plaintiff's nondischargeability action and did not discuss the bankruptcy court's ancillary jurisdiction. This court respectfully disagrees with the holding in *McAllister.*